Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons have any amount of form of business before the Honorable the United States Court of Appeals for the Fourth Circuit. I must to give their attention for the court is now sitting. Godspeed United States and it's Honorable Court. Thank you. Welcome to everyone. As you can see we had a few little glitches to start out but I think we're back on track. We will proceed as though we are in court. Some call this virtual. This is not virtual. This is actually real court. So you're in you're in the right place. Your judges today, Judge Harris and Judge Quattlebaum and myself. This case we're about to hear I hope is Kirk v. Commissioner of Social Security. Is that correct? Good. Then we will proceed by hearing from the appellant. Good afternoon and may it please the court. Thomas Pullum for the Commissioner of Social Security. Because this case involves a challenge to the administrative procedures used by the Social Security Administration and its redeterminations, I think it makes sense to begin with a summary of the administrative process that was provided here. First, SSA's Appeals Council internally reviewed each application to determine whether the award of benefits could be supported by the remaining untainted evidence in the case file after disregarding evidence identified by the Inspector General. Counsel, can I can I actually ask you a question right at the very beginning of the process? Yes. Even before that happened, right, someone did like a search of thousands and thousands of files to see who was connected to this con fraud. Is that right? The Inspector General carried out an investigation of the fraud. That's okay. All right and what if an error had happened at that point? Like what if somebody sent, you know, put in the con fraud pile a case that didn't belong there, like maybe Huffnagle was the treating physician or something, but the report came in having nothing to do with con. How would somebody challenge that? You know, it's just like a clerical error. So if the case didn't involve evidence submitted by con, then it wouldn't have been disregarded by the the ALJ specifically only disregarded evidence that was signed by one of these physicians and submitted by con himself. Right, but what and I'm saying just imagine hypothetically some kind of a clerical error, like someone said it was submitted by con, but it actually wasn't. And so now the ALJ is disregarding it. Is there anything the applicant can do to say I've never heard of this con person, he wasn't my lawyer, Huffnagle was my personal physician, I don't know why I'm here? Or is the government's position there's nothing you can do, but it doesn't really matter because putting in the con report wouldn't make much of a difference? Well, I would like to get whether get to the issue of whether this would make any difference, but I believe that in that circumstance where con was not the lawyer, I mean the the the applicant could have brought that to the ALJ. Because the ALJ could only could only not review the exclusion of evidence that had been identified by the Inspector General and the Inspector General's referral specifically referred to reports that were signed by the physicians and submitted by con. I don't want to hold you up on this. I understand why it shouldn't play out that way. I'm just asking you to imagine somebody made a file got put in the wrong pile, it got put in the con pile, although it should not have. And nobody did anything on purpose, but there you know it's thousands and thousands of files, a mistake got made, that's all. So how does that get fixed? Well, I'm not sure it would if it somehow kind of made it within the scope of the referral. But as Judge Rogers explained, the nature of the investigation here provides kind of assurance as to the reliability of what the Inspector General did, which was kind of the investigation into the whole fraud was carried out. And then the Inspector General identified forms that matched the template forms, and that was how cases were were identified here. And the evidence that was excluded here, I think it's important to look at what that was, because this may get to Your Honor's question about whether it would make a difference, was this RFC form that purported to identify the claimant's kind of capacity to work, and a short narrative report that according to the RFC form provided explanation for the conclusions listed on the form. This was the report provided by a doctor hired by the attorney who met with the beneficiary at most once. Under no circumstances could this be entitled to controlling weight as Judge Daugherty gave it. And so that's why these forms kind of seem to take on and outsize importance in these adjudications. No ALJ properly following SSA's regulations, which Daugherty did not, would give these forms that kind of determinative weight. And so the exclusion of the form is... Yes. Counsel, if I could ask a question that relates to timing. It appears from the record that the first or at least one of the earliest times this kind of began to came to light was in 2006. And then the investigation, the Inspector General's activities doesn't begin until sometime in 2010, perhaps around the time of the Wall Street Journal article, or at least generally. And at least there's allegations that that delay made it more difficult for some claimants to attempt to provide other evidence besides the tainted form, as you call it. What role does that delay play in our legal analysis? Does it play any? If so, where does it fit from a structural legal analysis? So I don't think it plays any role here. There's no claim in this case, as there was in Hicks, that the delay somehow deprived the Social Security Administration of moving forward with the redeterminations. The Sixth Circuit rejected that claim. It's not present here. And I don't think it affects the due process analysis at all, because we're looking at whether there was a risk of error in the termination of benefits here. And I don't think there's any real reason to believe that the delay contributed to a risk of error. To be sure, the plaintiffs have made some comments about how the passage of time makes it more difficult for them to obtain medical records. But all of their medical records should already be in the case file as a result of their applications and the SSA's normal evidence development practices. Both of the plaintiffs here stated during their administrative processes that their records were complete on redetermination. And they haven't identified any records that were actually missing from their files. Had they done so, they could have brought it up at the redetermination and asked the ALJ for assistance in further developing the case file. But that wasn't done. If I could follow up on that. Your answer referred to these plaintiffs a couple times, perhaps in a way that's different than the Hicks plaintiffs, for example. And that brings up a question which I want to ask your colleague as well. Are we supposed to look at it that way on an individual basis? Or are we supposed to look at this categorically from a due process standpoint? I think we look at it kind of generally how the process plays out in the mind run of cases, kind of without being distracted too much by a severe hypothetical that hasn't occurred or is very unlikely to occur. These plaintiffs, what happened to them was by all accounts, I believe, pretty standard for how the process was supposed to work. Counsel, what's your authority for that proposition? That we look at it generally as opposed to a maybe one off unusual situation? I don't have a case at hand, I'm afraid. But my recollection from reading due process cases is that you look at how the procedures kind of are, you know, did work and are generally meant to work. And the balance could tip. Okay. I'm sorry, maybe you're just about to get to this. I mean, the standard itself asks us to look at the risk of error, right? So that seems different to me than from just asking how does it mostly play out? Aren't we supposed to ask what is the risk that it won't play out that way? But I think that's part of a kind of realistic assessment of risk of error. I mean, if there's that is, you know, kind of theoretically possible, but it's never actually going to happen in the real world, there's no indication that it's likely to happen. That's a very, very small risk of error and would kind of factor into the Matthews analysis that way. If there were a serious risk of error, then the balance could tip differently. But I just I don't think we have a No, go ahead, Judge. No, no, you go. Well, just in a the reason there's no serious risk of error here because just as a matter of common sense, the idea that you would have to reconstruct your medical history from many years ago just seems like it would be quite burdensome and sometimes hard to do. And particularly hard to do maybe for people who are caught up in this con thing because he wasn't papering the files properly. He was just relying on the fraudulent RFC or CFs. And then even when the government got the reports, right, they all got lost or something. I can't quite remember what happened with all the reports that were seized or the medical records that were seized. So the reason on top against all of that, we have that if everything works the way it's supposed to work, the original ALJ will have made sure like but who was the original? How will the file have been papered if Khan didn't file it and it's part of the fraud? So the ALJ himself is in on it. Who's making sure everything's in that file? So before it even gets to an ALJ, it goes through an administrative process through what are called the DDS offices. These are the state agencies that work kind of process the part of this process is the agency asks the person to identify all of their treatment providers. There's a form that says, you know, list everyone who might have medical records for you. And the person is also invited to submit medical records. So what the agency does is they take all of the records that are submitted. They also reach out to those providers to get records from them. That's what is referred to as the development process. When I use that word, that's what when SSA goes out and gets these records. There's a regulation that requires SSA before it denies benefits to construct a complete medical history of the past 12 months before the before the application time. So all of that evidence is in the case file from the application initial decision. Then there's a redetermination that happens before an ALJ gets involved. The process goes happens again. Ask who are your treatment providers. SSA reaches out to them to get records. Invites the applicant to provide records that he or she has. So all of that is already in the case file. Khan did not submit this evidence until it got to the ALJ hearing and where Judge Daugherty was involved. That was the fraud was to submit this evidence that Judge Daugherty solicited. The way it's described in the Senate report and the criminal documents is Judge Daugherty would call Khan's office, say I need physical or mental evidence. And depending on which one it was, Khan would arrange with one of his associated physicians to the form. In some cases write the report. And that would be submitted to Daugherty. Speak to this. Do we need to apply this Matthews three-factor balancing test to reach the result? Yes, we do. As this court and the Supreme Court have said many times, the Matthews balancing test is the means by which a court determines whether a meaningful hearing has provided in a meaningful time. There's no dispute here that the plaintiffs received hearings on the question of their entitlement to benefits. Did the Sixth Circuit do so in the Hicks case? The Sixth Circuit did say that this case was governed by kind of some other type of due minimum due process. Judge Rogers explained why that was inconsistent with 40 plus years of Supreme Court precedent. And it finds no anchor in the Constitution itself, which just guarantees a right to due process. There's no kind of minimum due process that's assessed one way and other due process that's assessed another way. They guarantee, as Matthews explains, is the right to a meaningful hearing in a meaningful manner in a meaningful time. And the way we assess whether a hearing was meaningful under the circumstances is the application of the Matthews test. So if we're at a breaking point, I'm happy to reserve time for my rebuttal. All right, we can do that. We'll hear from your opponent. Thank you. Ms. Stewart, can you hear us? Apologies, I was trying to unmute. Good afternoon, Your Honors, and may it please the court. My name is Alexandra Stewart, and I represent plaintiffs Gary Kirk and Larry Taylor. What do you say is the issue in this case? We've been going around a lot of legal arguments, what's the issue here? Is it a concern about due process and not being able to address a matter that's been sort of handled in a per se manner? What is the issue in this case? Yes, Your Honor, the issue is fundamentally opportunity to be heard. So that right is guaranteed under the due process clause, and as the Seventh Circuit held in Jackson v. Saul, it's also a fundamental part of agency proceedings. So you've got two circuits, you've got the Seventh and the Sixth Circuit, somewhat different rationale. They've gone in your favor on it. Do we need to apply that Matthews three factor balancing test here? No, Your Honor, and as Judge Thapar said in the district court opinion in Hicks, when the naked eye can see that the process falls short of the mark, courts need no measuring tape. So that's our position on Matthews. Since plaintiffs have not... Ms. Stewart, if I could follow up on that. Does Matthews say that there's some floor proceeding or some other proceeding that you apply, or does any other case from the Supreme Court since Matthews say what you just said? I want to make sure my question is clear. I know you can make an argument for other cases. I've read that and I'm not trying to say those aren't correct, but isn't it true that the Supreme Court has never said what you just said? The Supreme Court has not explicitly said that you don't need to reach the three factors if it's obviously deficient in terms of opportunity to be heard. But that's not necessary to our position. We're just saying that there are certain things that can't be balanced away. And so whether you plug them into the Matthews test or you just examine them on their own, they can't be balanced away under any standard. So no matter what standard you apply, the opportunity to be heard is a fundamental aspect of a meaningful hearing. And the plaintiffs didn't have that in this case. But isn't the private interest that you assert to be violated the discontinuance of the disability benefits? Yes, Your Honor. And you had multiple opportunities to be heard in connection at the proceeding where that determination was made. It seems like your argument is despite that, because there was not an opportunity to be heard at the exclusion of the reports process, that your rights have been violated. But does it matter that exclusion was not the final decision into whether your benefits were terminated or not? No, Your Honor. It doesn't matter that it wasn't the ultimate issue. Due process includes the right to be heard on important factual determinations that lead up to the ultimate issue. So although we did have the right to be heard on the ultimate question of whether the claimants were disabled at the relevant period, it was important. And the determination that their best evidence was fraudulent was important. And so an important component of due process was the right to be heard on that determination. Can I ask you, counsel, just on this point about how important it was, maybe to respond to the government just in a couple of sentences? I mean, as I understand it, their basic argument is it wasn't important. Like everything you needed was already in the file. And that's not just does its business. It really doesn't matter. These reports from the fraudulent doctors, and even if they had come in, they come in with these huge credibility question marks, so it wouldn't have made any difference. So why is it practically important? It's important for several reasons, Your Honor. First, it's true that the agency is supposed to gather medical evidence from the 12 months prior that is available from a claimant's physicians, treating physicians, or hospital visits. But most of that evidence is not going to be medical opinion evidence. So it won't be opining on how the person's physical conditions affect the person's functional capacity. And so in this case, the only opinion evidence that the plaintiffs solicited was from these doctors. And in Kirk's case, there was opinion evidence from his treating physician's assistant that wasn't credited. So it was important in that these were the only people on these claimants' side opining that their physical conditions, which were in the record, actually had effects on their ability to perform work. And so it was important in the initial stage for them to have that opinion evidence. And it's even more important at the redetermination stage, given the length of time between the initial determination and the redetermination. So Mr. Taylor, for example, submitted evidence of his degenerative disc disease, but it was deemed to be outside of the relevant time period. So there's just not a good way to recreate evidence about someone's limitations from years earlier. This is... You know, returning to Judge Qualibon's concern, and that is, you know, you look at the specific reports here, and that's what your challenge is, the fact that you're not able to use those reports. Not that you can't ultimately bring more evidence and more information on it. And so that is the big challenge you got here. If you look at in terms of what seems to be established in criminal violations, which are not part of the record, but at least known, that this procedure definitely fit within what we would call fraud. If all of these things happened, this lawyer sort of fabricated a procedure for all of these different clients. So fraud, let's assume it just what happens with your clients if we agree with you? I mean, what happened in the Hicks case? I'm really confused about that because it looks to me, all you're doing is asking for a chance to rebut or whatever. What if that little procedure is allowed to get up and rebut? And where does that go? I don't... I'm not following that at all. It looks like to me, it goes nowhere because everything that's pointed there, unless you can say, no, he didn't do that in my particular case. Is that all you asked him for that you want to be able to prove in your particular case? He didn't, this didn't happen. You can't categorically put them all together to happen in every case or what evidence from a criminal trial that in your case that it did happen would be sufficient? Your Honor, we are only asking to be able to say that it did not happen in our case. So what happens when you go back? What happened in Hicks to those plaintiffs there? I mean, when they sent it back, what happened? The agency hasn't conducted those redetermination hearings yet. And so we don't have an application of what happened. What's the procedure? What's the procedure that the trial court used or is to be used in that case? I mean, what you said a hearing and it seems to be rather limited in terms of what you are seeking here. What type of hearing are you talking about? Well, it doesn't have to be a separate hearing, Your Honor. It can just be part of the ordinary redetermination hearing. But the procedure that the agency has laid out includes an OIG affidavit saying that this is the basis that we used to sweep up this particular case into the broader pattern or scheme. And then the plaintiff is able to submit rebuttal evidence and say, these are the tests that they conducted. This is my testimony about what happened in my case and the examinations that they performed. And so they can say that it didn't happen in their case. Basically, the plaintiff was sick to say that it wasn't fraud in their case, you're saying? That yes, that the doctor's evidence, that their observations, particularly the report accompanying the RFC forms, that those observations were genuine and that they were not fraudulent. Yes. And can I clarify? Because this is I just want to make sure I understood what you said. So you're not asking. I had this question, too, that there be an OIG witness who's going to get up there and be cross-examined. You're not asking for that. You're asking for more what the court's talking about in Jackson, just a chance to make your argument by motion. And in the vanishingly small set of cases where there's a fact dispute, you might have to have actual factual development. But mostly, either you won't be able to make your case or you will. That that's exactly right, Your Honor. And I will say at the outset, the agency has never provided the criteria that it used in identifying cases for the OIG referral. There's never been an assertion that every single con case, every single case handled by Daugherty or every single case handled by the doctors or every case with all three of those criteria fit within the OIG referral. And certainly that that was not part of the OIG referral. So we don't know what criteria. Yes, Your Honor. You can finish your answer. I'm sorry. Go ahead. I didn't mean to cut you off. I was just going to say we don't know what criteria they used. We don't know what subset of those cases were identified as being part of the fraud and which ones they decided did not have any reason to believe were fraudulent. And so we would like an opportunity to show that our cases fit within those that are that are not fraudulent. It let me ask a question, please, that I asked your colleague about whether we look at the peculiar situation of your clients here or whether we look at this situation categorically. I'm reading from Matthews and it says that procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exceptions. So it seems to me, as I read that, that we're supposed to look at this categorically and the risk of incorrect determination categorically. Do you agree with that? I do agree with that, Your Honor. And I at the same time, I think that the experiences of our We know, we know, don't we, that I think that OIG identified 1700 something tainted cases. Is that right? And it looks like either in the ones that they found there was sufficient evidence in the record, you know, irrespective of the tainted forms, you know, that when you look at the you know, overall mix over way over half on the claimants are still retaining their benefits. I mean, that's the numbers, not in the record. Our math is like 65 percent. I don't know if that's exactly correct. Well, the government would be in a better position to provide the exact number, but I understand that they've said that it's about 55 percent. But either way, the court also held in Matthews that their statistics rarely provide a satisfactory measure of the fairness of the decision making process. So even if ultimately the rate of success is similar in this process to the rate of success in initial determinations, that doesn't mean that the risk of error in the category of cases is permissible from a due process perspective. And so even if people were able to have a complete medical file from the preceding 12 months, that's not guaranteed by this process. And so it's so the risk of error is not necessarily reflected in the ultimate statistics in this case. And I think that in addition to our clients, the risk of error can be shown through the Hicks case as well. So in our case, for example, Mr. Kirk and Mr. Taylor have both been found disabled in their new applications. They just weren't able to show that for the period at issue. In the Hicks case, some of the plaintiffs had passed continuing disability reviews and they still failed in their redetermination hearings. So even though those aren't perfect corollaries or perfect analogies to the redetermination inquiry, they do show that there is a risk that people who are legitimately disabled are unable to show that they were legitimately disabled during the redetermination process. And that's where that risk of error comes in. Given that, if I'm reading Matthews right and assuming for a minute we're under Matthews, we're balancing sort of this risk of error against the cost of additional process. So I worry that some of the briefing in this case and some of the other cases were doing that balancing on an assumption that we were talking about something more like mini trials, a right to put an OIG witness up on the stand and cross-examine in every case. But you're saying, I just want to be, that's not what we're talking about. That's not what we're talking about here. We, most fundamentally, we would like the opportunity to object to the fraud finding. The plaintiffs don't have the ability to object to the fraud finding. And so that during... So like motions in limine is sort of what we're talking about. Correct. Okay. So in the same proceeding, you're simply saying you just want to have an opportunity to present your objection. That's correct, Your Honor. And, okay. Speak, I don't know if the judges want... Go ahead, Judge Qualibon. I was about to... You go ahead. No, go ahead. I was going to shift to the APA, but I want you to go ahead and finish with this. Okay. I got one last question on this matter. Tell me why this case isn't like Scheffler, where categorically polygraph evidence is excluded. It might be, in certain cases, the only available evidence and it's excluded. I think that there was maybe in the Sixth Circuit trial, or maybe the district court proceeding in Hicks, or maybe it was at the circuit court, there was a distinction that said, well, those are categorical type rules and here they're not. But I don't think that's right. I think here there's a categorical exclusion of the forms. There's then an individualized assessment of whether there's enough remaining evidence to support the disability. So how do you distinguish between Scheffler, which is deemed to be okay, and this situation, or Scheffer? Yes, Your Honor. There are two distinctions. First, the SSA has not declared that there was a categorical exception. We don't know exactly why cases were identified as falling within this reason to believe framework and why they weren't. So it's not that every single case affected by Condordi and the doctors was swept up in this OIG inquiry. We don't know what their criteria were. My colleague just said in opening that they identified the RFC forms that matched the template RFC forms. And we don't know what criteria they used in matching either. So it's not a categorical exclusion. But more fundamentally, in a more general sense, this would be more like saying, we know that polygraph evidence is excluded. We would like the opportunity to show that our evidence is not polygraph evidence. And so in this case, to explain, we know that all evidence where there's reason to believe it was fraudulent needs to be excluded. And we're saying that the individual aspect of that determination, that there was reason to believe that there was fraud in our case, we should have the opportunity to argue that individual aspect of the case. So you've got about a minute or so left here. And would you briefly just address, you've asked us to apply this APA formal type adjudication procedure when, in fact, we know these proceedings tend to be informal, non-adversarial. So speak to that very briefly. Yes, Your Honor. And for the APA, the more straightforward claim is the arbitrary and capriciousness claim, which is that the agency provides an opportunity to rebut the fraud finding when it's made by an SSA investigator. And they don't provide the opportunity to rebut the finding when it's made by an OIG investigator. And so the agency refuses to treat like cases which is arbitrary and capricious. In terms of formal adjudications, this court has previously held that, in general, SSA hearings are formal adjudications subject to the formal adjudication requirements. So even though they're non-adversarial, they still are required to comply with the initial determination hearings for those purposes. So following that syllogism. I've got your answer on that. I'll ask the judges. Your time is about up. But I'll ask the judges, do you have any further questions? No, thank you. Appreciate your argument. Thank you. Thank you, Ms. Stewart. We'll go back and we'll hear from you, Mr. Pullen. You have a few minutes if you choose to use them. Proceed. Thank you, sir. I had to unmute, trip myself up there. There's a few points I'd like to hit here. One, I think we got to an important point during opposing counsel's presentation about what do they hope to establish in these procedures. And what counsel said was that, you know, there may have been fraud elsewhere, but there was not fraud in my particular case. The statutory standard doesn't require evidence that there was fraud in a particular case. It requires reason to believe that fraud was involved in the submission of evidence. As Judge Rogers explained, that very low bar is satisfied by evidence of the overarching conspiracy among Khan, Doherty and the medical professionals involved. So this goes to your understanding. And do you understand now that they're what they're asking for is appears to be rather limited, not a full blown hearing, but an opportunity to rebut, which could be, as Judge Harris indicated, maybe a motion to eliminate or that sort of thing. So I'm happy to hear that they've retreated from their initial request. I want to speak to your happiness. I want to know, are you in a, was it your understanding that you were arguing against something greater than that? And now that you know that is a more I think it still does not. The weighing of the three factors under Matthew still would not guarantee even that reduced procedure, I think, related to some of the reasons I was just getting out, which is that there are no there's no reason to believe that even this kind of reduced procedure would materially affect the risk of error. The Supreme Court in Kaley, when it was applying a Matthews to a kind of similar standard, a probable cause standard, said, you know, the standards is just so easily met that having an adversarial process, while generally adversarial processes are kind of helpful to the truth finding process here. It's just it's the difference is too slight to support a constitutional requirement. It's not going to make a practical difference. I mean, it is all it is all a balance. Right. And now we're talking about very low costs. And I don't see like, why wouldn't it be sort of appropriate, even if it's going to be the rare case where someone could show there's no reason to believe there's fraud? I mean, if someone can put down in their motion, you know, my RFC attached a lab report, right? The way the SSA interprets this, it's going to exclude not only the fraudulent RFC itself, but also if it attached like a lab report or blood work or something that's getting thrown out to why not let someone come in and say, look, here's the information about the lab that did the blood report. I think this is pretty reliable and let the ALJ make a decision. Or, you know, I saw Huffnagle as my personal physician and I sat there while he filled out the RFC and I watched him do it by hand. It wasn't from a template. Like what? Why not? So a couple of things with respect to kind of the lab reports, those wouldn't be excluded here. They would come in because they could be obtained from the provider itself as part of the normal development process. It did not happen in this case and it hasn't happened in other cases that the plaintiffs have pointed to where there were these types of lab reports or, you know, some externally provided reliable source that could be provided. I'm misremembering the SSA didn't come up with a whole separate rule to say specifically we're also excluding the attachments to the RFC. Did I just get that wrong? So the attachments, and there's one in the record at JA280, what it was was a narrative report provided by No, no, that's not what I'm talking about. I must have misremembered. I thought that, and I cannot find it, of course, in front of me, but I thought that there was a separate thing in the Federal Register that said as we apply this rule, we're also going to be excluding like outside lab reports that were attached to these things, no? It would be, so if one happened to be attached, it would be excluded, but then it would come in through the lab that conducted that report. So only kind of that copy. Then why did they have to put out a whole separate Federal Register notice saying we're excluding it if it's going to be included anyway? What was the point? I don't know that there was a Federal Register notice. I'm not exactly, I apologize. I'm not sure what Your Honor is referring to. But there is some rule that says we're excluding them if they're attached to a CON-affiliated RFC. But you're telling me that that doesn't matter, that rule has no effect because they're coming in anyway. We were just spinning our wheels on that one. If it could be, yes, it could be obtained through, no, what they were excluding was when it was submitted by CON, when it, and signed by one of the doctors, when it, it could be obtained, the same report could be obtained through an outside source. So your time is up, your time is up, but Judge Qualibon, did you have a further question? No, I'm fine. All right, I want to thank both of you. Thank you very much. A fairly unique setting, but I think you've done well under the fashion that reflects that we considered it failed. Thank you very much. Thank you. Thank you.
judges: James A. Wynn Jr., Pamela A. Harris, A. Marvin Quattlebaum Jr.